**FILED**

MAY 26, 2011

MAY 2 6 2011

**MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT**

**RECEIVED**

MAY 2 6 2011

**MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA )
)
vs. )
)
EDWARD RENKO, )
ALEXANDER FIELD, )
GARY FISHKIN, )
KALLIOPE SHAYKIN, and )
TATYANA FURMAN )

No. **11 CR 373**

Violations: Title 18, United States Code,
Sections 1014, 1343, 1344 and 2

**UNDER SEAL**

JUDGE LEINENWEBER

MAGISTRATE JUDGE VALDEZ

**COUNT ONE**

The SPECIAL JULY 2010 GRAND JURY charges:

1.    At times material to this indictment:

**The Defendants**

        a.      Defendant EDWARD RENKO owned the residence at 711 Greenwood

Road, Northbrook, Illinois ("711 Greenwood"), was the Chief Executive Officer of EAG

Capital Holdings, Inc. ("EAG Capital"), and was a member of Capital Development Group,

Inc. ("Capital Development") and Northshore Center THC, LLC ("Northshore Center"), all

of which were located at 3100 Dundee Road, Suite 107, Northbrook, Illinois;

        b.      Defendant ALEXANDER FIELD owned the residence at

700 Greenwood Road, Northbrook, Illinois ("700 Greenwood"), was the President of EAG

Capital, and was a member of Capital Development;

c.  Defendant GARY FISHKIN owned the residence at 688 Greenwood Road, Northbrook, Illinois ("688 Greenwood"), was the Chief Operating Officer of EAG Capital, and was a member of Capital Development and Northshore Center;

d.  Defendant KALLIOPE SHAYKIN was the President of Absolute Title Services, Inc. ("Absolute Title"), located at 2227 Hammond Drive, in Schaumburg, Illinois, which issued title insurance policies under the name of Title CompanyA, and held an escrow account at The PrivateBank for which SHAYKIN had signing authority;

e.  Defendant TATYANA FURMAN was a loan officer and mortgage broker at American United Mortgage Company located at 3100 Dundee Road, Suite 102, in Northbrook, Illinois, which was 50%-owned by EAG Capital;

f.  Defendants RENKO, FIELD, and FISHKIN individually had signing authority over accounts held at various financial institutions in the names of EAG Capital, Capital Development, and other entities (collectively, the "Capital accounts");

**The Lenders**

g.  Bank of America, N.A. ("B of A"); PNC Bank, N.A., formerly known as National City Corp. ("National City"); ING Bank, F.S.B. ("ING"); FirstBank; and American Enterprise Bank ("AEB") were financial institutions, the deposits of which were insured by the Federal Deposit Insurance Corporation;

h.     B of A; National City; ING, FirstBank; AEB; HLB Mortgage ("HLB"); Countrywide Home Loan ("Countrywide"); and Homecomings Financial, LLC ("Homecomings") (collectively, "lenders") made mortgage loans;

i.     Lenders sold and assigned loans to agents, successors, assigns, nominees, servicers, and trustees (collectively, "successors"); and

j.     Lenders and successors required applications for mortgage loans to provide truthful information, including information regarding a borrower's income, assets, liabilities, financial condition, real estate owned, and encumbrances thereon, which information was material to the approval, terms, and funding of the loans, and decisions to acquire loans.

2.     In or about June 2006, defendants RENKO and FIELD obtained a $4 million line of credit from Foster Bank for the use of EAG Capital that was secured by separate mortgages on 711 Greenwood and 700 Greenwood with each security agreement containing a covenant that RENKO and FIELD shall not create or permit to be created or filed against his respective property any other mortgage or lien without the express written consent of Foster Bank ("700 Greenwood Mortgage Loan 1" and "711 Greenwood Mortgage Loan 1"), and defendant FISHKIN obtained a $1.4 million first loan and a $400,000 second loan from HLB to finance the purchase of 688 Greenwood from seller Capital Development ("688 Greenwood Mortgage Loans 1 and 2").

3.     In or about July 2006, Northshore Center borrowed $26.21 million from FirstBank to finance the purchase of approximately 14 acres at the intersection of Dundee Road and Skokie Boulevard in Northbrook, Illinois, and pre-development work on a proposed mixed-use real estate development known as the Center of the Northshore (the "Northshore Center Mortgage Loan").

4.     Starting no later than approximately June 2006 and continuing until at least on or about November 7, 2007, within the Northern District of Illinois, Eastern Division, and elsewhere,

EDWARD RENKO,
ALEXANDER FIELD,
GARY FISHKIN,
KALLIOPE SHAYKIN, and
TATYANA FURMAN,

defendants herein, devised, intended to devise, and participated in a scheme to defraud and to obtain money and property from lenders and Title Company A by means of material false and fraudulent pretenses, representations, and promises, and by material omissions, which scheme affected a financial institution.

5.     It was part of the scheme that defendants RENKO, FIELD, FISHKIN, SHAYKIN, and FURMAN fraudulently obtained at least approximately $8.45 million in residential loan proceeds by repeatedly obtaining mortgage loans secured by 711 Greenwood, 700 Greenwood, and 688 Greenwood, purportedly for the purpose of refinancing existing loans secured by those properties, and then not using the proceeds to pay off the existing

4

mortgage loans, but instead converting the fraudulently obtained loan proceeds to their own use, including to pay personal expenses, business expenses, and interest payments on the $26.21 million Northshore Center Mortgage Loan.

6.      It was further part of the scheme that defendant FURMAN prepared and caused to be prepared on behalf of defendants RENKO, FIELD, and FISHKIN fraudulent loan applications containing false representations and material omissions, including those concerning the respective defendant's liabilities secured by the defendant's properties and the purpose of the loans, knowing that the false representations and omissions in the loan applications were material to the lenders' decisions to approve the loans.

7.      It was further part of the scheme that defendants RENKO, FIELD, and FISHKIN signed each of their respective fraudulent mortgage loan applications, acknowledging and agreeing that all of the information in each application was true and correct, knowing that the applications contained false representations and omissions that were material to the lenders' decisions to approve the loans.

8.      It was further part of the scheme that defendants RENKO, FIELD, FISHKIN, and FURMAN submitted and caused to be submitted to the lenders the false and fraudulent loan applications.

9.      It was further part of the scheme that defendants RENKO, FIELD, FISHKIN, and SHAYKIN created and caused to be created and submitted to the lenders false and fraudulent documents pertaining to the mortgage loans on 711 Greenwood, 700 Greenwood,

and 688 Greenwood that caused the loan transactions to be closed without paying off existing mortgages on the properties and that falsely represented to the lender on each respective transaction that its mortgage was a valid first lien on the property, including false and fraudulent settlement statements, also known as HUD-1 forms, signed and caused to be signed by RENKO, FIELD, FISHKIN, and SHAYKIN, which falsely certified that certain mortgages on the properties would be paid off at closing and falsely omitted to disclose other existing mortgages on the properties all together.

10.     It was further part of the scheme that defendant SHAYKIN created and caused to be created and submitted to lenders fraudulent title insurance policies under the name of Title Company A that intentionally omitted prior existing mortgages and liens on the properties, thereby falsely representing to the lender on the respective transaction that its mortgage was a valid first lien.

11.     It was further part of the scheme that defendants RENKO, FIELD, FISHKIN, SHAYKIN, and FURMAN caused lenders to send loan proceeds via interstate wire transfer to the Absolute Title escrow account based upon false and fraudulent representations and material omissions in the loan applications and closing documents.

12.     It was further part of the scheme that defendants RENKO, FIELD, FISHKIN, SHAYKIN, and FURMAN disbursed and caused to be disbursed loan proceeds to themselves and others.

## FIELD LOANS

### 700 Greenwood Mortgage Loan 2

13.     It was further part of the scheme that on or about April 20, 2007, defendant FURMAN prepared and defendant FIELD signed an application to Homecomings for a $1 million refinance loan secured by 700 Greenwood ("700 Greenwood Mortgage Loan 2") falsely representing, among other things, that the purpose of the loan was to refinance the property, and intentionally omitting the existence of any mortgage on the property, including 700 Greenwood Mortgage Loan 1, defendants knowing these representations and omissions were false and material to Homecomings' decision to approve the loan.

14.     It was further part of the scheme that defendant FURMAN submitted and caused to be submitted the loan application for 700 Greenwood Mortgage Loan 2 and an appraisal valuing the property at $2.15 million.

15.     It was further part of the scheme that on or about May 14, 2007, defendants FIELD and SHAYKIN signed and certified a HUD-1 form containing false representations, including the omission of any existing mortgages to be paid off at the closing of the refinance loan, causing all of the loan proceeds to be disbursed at the closing to defendant FIELD as the borrower, defendants knowing that 700 Greenwood Mortgage Loan 1 existed at the time, and that the property was then securing loans totaling at least $5 million.

16.     It was further part of the scheme that defendant SHAYKIN created and issued and caused to be created and issued to Homecomings a fraudulent title insurance policy under

7

the name of Title Company A that intentionally omitted the existence of mortgages and liens on the property, including 700 Greenwood Mortgage Loan 1, thereby falsely representing to Homecomings that its mortgage was a valid first lien.

17.     It was further part of the scheme that on or about May 18, 2007, defendants FIELD and SHAYKIN caused Homecomings to fund 700 Greenwood Mortgage Loan 2 and defendants caused loan proceeds to be disbursed to at least two of the Capital accounts and defendant FIELD, and not to payoff the existing 700 Greenwood Mortgage Loan 1.

**700 Greenwood Mortgage Loan 3**

18.     It was further part of the scheme that on or about June 12, 2007, defendant FURMAN prepared and caused to be prepared and defendant FIELD signed an application to B of A for a $1.5 million refinance loan secured by 700 Greenwood ("700 Greenwood Mortgage Loan 3") falsely representing, among other things, that the purpose of the loan was to refinance the property, and intentionally omitting the existence of any mortgage on the property, including 700 Greenwood Mortgage Loans 1 and 2, defendants knowing these representations and omissions were false and material to B of A's decision to approve the loan.

19.     It was further part of the scheme that defendant FURMAN submitted and caused to be submitted the loan application for 700 Greenwood Mortgage Loan 3 and an appraisal valuing the property at $2.15 million.

20.    It was further part of the scheme that on or about June 12, 2007, defendant FIELD signed and certified and defendant SHAYKIN caused to be signed and certified a HUD-1 form containing false representations, including the omission of any existing mortgages to be paid off at the closing of the refinance loan, causing all of the loan proceeds to be disbursed at the closing to defendant FIELD as the borrower, defendants knowing that 700 Greenwood Mortgage Loans 1 and 2 existed at the time, and that the property was then securing loans totaling at least $6.5 million.

21.    It was further part of the scheme that defendant SHAYKIN created and issued and caused to be created and issued to B of A a fraudulent title insurance policy under the name of Title Company A that intentionally omitted the existence of mortgages and liens on the property, including 700 Greenwood Mortgage Loan 1 and 2, thereby falsely representing to B of A that its mortgage was a valid first lien.

22.    It was further part of the scheme that on or about June 18, 2007, defendant FIELD sent an email to defendant SHAYKIN providing wiring instructions for disbursement of the proceeds from 700 Greenwood Mortgage Loan 3 to at least one of the Capital accounts and FIELD.

23.    It was further part of the scheme that on or about June 18, 2007, defendants FIELD and SHAYKIN caused B of A to fund 700 Greenwood Mortgage Loan 3 and defendants caused loan proceeds to be disbursed to at least one of the Capital accounts and FIELD, and not to payoff either of the existing 700 Greenwood Mortgage Loans 1 and 2.

**700 Greenwood Mortgage Loan 4**

24. It was further part of the scheme that on or about July 2, 2007, defendant FURMAN prepared and defendant FIELD signed an application to HLB for a $1.35 million refinance loan secured by 700 Greenwood ("700 Greenwood Mortgage Loan 4") falsely representing, among other things, that the purpose of the loan was to refinance the property, and intentionally omitting the existence of any mortgage on the property, including 700 Greenwood Mortgage Loans 1, 2, and 3, defendants knowing these representations and omissions were false and material to HLB's decision to approve the loan.

25. It was further part of the scheme that defendant FURMAN submitted and caused to be submitted the loan application for 700 Greenwood Mortgage Loan 3 and an appraisal valuing the property at $2.15 million.

26. It was further part of the scheme that on or about July 18, 2007, defendants FIELD and SHAYKIN signed and certified a HUD-1 form containing false representations, including the omission of any existing mortgages to be paid off at the closing of the refinance loan, causing all of the loan proceeds to be disbursed at the closing to defendant FIELD as the borrower, defendants knowing that 700 Greenwood Mortgage Loans 1, 2, and 3 existed at the time, and that the property was then securing loans totaling at least $7.85 million.

27. It was further part of the scheme that defendant SHAYKIN created and issued and caused to be created and issued to HLB a fraudulent title insurance policy under the name of Title Company A that intentionally omitted the existence of mortgages and liens on

the property, including 700 Greenwood Mortgage Loans 1, 2, and 3, thereby falsely representing to HLB that its mortgage was a valid first lien.

28.     It was further part of the scheme that on or about July 20, 2007, defendant FURMAN sent an email to defendant SHAYKIN providing wiring instructions for disbursement of the proceeds from 700 Greenwood Mortgage Loan 4 to at least one of the Capital accounts and FIELD.

29.     It was further part of the scheme that on or about July 20, 2007, defendants FIELD, SHAYKIN, and FURMAN caused HLB to fund 700 Greenwood Mortgage Loan 4 and defendants caused loan proceeds to be disbursed to at least one of the Capital accounts and FIELD, and not to payoff any of the existing 700 Greenwood Mortgage Loans 1, 2, and 3.

## RENKO LOANS

### 711 Greenwood Mortgage Loan 2

30.     It was further part of the scheme that on or about March 22, 2007, defendant FURMAN prepared and defendant RENKO signed an application to Countrywide for a $1.457 million refinance loan secured by 711 Greenwood ("711 Greenwood Mortgage Loan 2") falsely representing, among other things, that the purpose of the loan was to refinance the property, and intentionally omitting the existence of any mortgage on the property, including 711 Greenwood Mortgage Loan 1, defendants knowing these

representations and omissions were false and material to Countrywide's decision to approve the loan.

31.     It was further part of the scheme that defendant FURMAN submitted and caused to be submitted the loan application for 711 Greenwood Mortgage Loan 2 and an appraisal valuing the property at $2.65 million.

32.     It was further part of the scheme that on or about March 22, 2007, defendant RENKO signed and certified and defendant SHAYKIN caused to be signed and certified a HUD-1 form containing false representations, including the omission of any existing mortgages to be paid off at the closing of the refinance loan, causing all of the loan proceeds to be disbursed at the closing to defendant RENKO as the borrower, defendants knowing that 711 Greenwood Mortgage Loan 1 existed at the time, and that the property was then securing loans totaling at least $5.457 million.

33.     It was further part of the scheme that defendant SHAYKIN created and issued and caused to be created and issued to Countrywide a fraudulent title insurance policy under the name of Title Company A that intentionally omitted the existence of mortgages and liens on the property, including 711 Greenwood Mortgage Loan 1, thereby falsely representing to Countrywide that its mortgage was a valid first lien.

34.     It was further part of the scheme that on or about March 27, 2007, defendants RENKO and SHAYKIN caused Countrywide to fund 711 Greenwood Mortgage Loan 2 and

12

defendants caused loan proceeds to be disbursed to RENKO, and not to payoff the existing 711 Greenwood Mortgage Loan 1.

**711 Greenwood Mortgage Loan 3**

35.    It was further part of the scheme that on or about March 22, 2007, defendant FURMAN prepared and defendant RENKO signed an application to National City for a $350,000 refinance loan secured by 711 Greenwood ("711 Greenwood Mortgage Loan 3") falsely representing, among other things, that the purpose of the loan was to refinance the property, and intentionally omitting the existence of any mortgages on the property, including 711 Greenwood Mortgage Loans 1 and 2, defendants knowing these representations and omissions were false and material to National City's decision to approve the loan.

36.    It was further part of the scheme that defendant FURMAN submitted and caused to be submitted the loan application for 711 Greenwood Mortgage Loan 2 and an appraisal valuing the property at $2.65 million.

37.    It was further part of the scheme that on or about April 5, 2007, defendants RENKO and SHAYKIN signed and certified a HUD-1 form containing false representations, including the omission of any existing mortgages to be paid off at the closing of the refinance loan, causing all of the loan proceeds to be disbursed at the closing to defendant RENKO as the borrower, defendants knowing that 711 Greenwood Mortgage Loans 1 and 2 existed at the time, and that the property was then securing loans totaling at least $5.807 million.

38.     It was further part of the scheme that defendant SHAYKIN created and issued and caused to be created and issued to National City a fraudulent title insurance policy under the name of Title Company A that intentionally omitted the existence of mortgages and liens on the property, including 711 Greenwood Mortgage Loans 1 and 2, thereby falsely representing to National City that its mortgage was a valid first lien.

39.     It was further part of the scheme that on or about April 5, 2007, defendants RENKO and SHAYKIN caused National City to fund 711 Greenwood Mortgage Loan 3 and defendants caused loan proceeds to be used for other purposes, and not to payoff the existing 711 Greenwood Mortgage Loans 1 and 2.

## FISHKIN LOANS

### 688 Greenwood Mortgage Loan 3

40.     It was further part of the scheme that on or about October 16, 2006, defendant FURMAN prepared and defendant FISHKIN signed an application to B of A for a $1.4 million refinance loan secured by 688 Greenwood ("688 Greenwood Mortgage Loan 3") falsely representing, among other things, that the purpose of the loan was to refinance the property, and intentionally omitting the existence of 688 Greenwood Mortgage Loan 2 on the property, defendants knowing these representations and omissions were false and material to B of A's decision to approve the loan.

14

41. It was further part of the scheme that defendant FURMAN submitted and caused to be submitted the loan application for 688 Greenwood Mortgage Loan 3 and an appraisal valuing the property at $2 million.

42. It was further part of the scheme that on or about November 6, 2006, defendants FISHKIN and SHAYKIN signed and certified a HUD-1 containing false representations, including that GMAC (successor to HLB on 688 Greenwood Mortgage Loan 1) was paid approximately $1,412,825 at the closing, defendants knowing this statement was false because they caused all of the loan proceeds to be disbursed to FISHKIN at the closing, and knowing that the property was then securing loans totaling at least $3.2 million.

43. It was further part of the scheme that defendant SHAYKIN created and issued and caused to be created and issued a fraudulent title insurance policy to B of A under the name of Title Company A that intentionally omitted the existence of mortgages and liens on the property, including 688 Greenwood Mortgage Loans 1 and 2, thereby falsely representing to B of A that its mortgage was a valid first lien.

44. It was further part of the scheme that on or about November 8, 2006, defendants FISHKIN and SHAYKIN caused B of A to fund 688 Greenwood Mortgage Loan 3 and defendants caused to be disbursed to at least one of the Capital accounts, and not to payoff the existing 688 Greenwood Mortgage Loans 1 and 2.

15

**688 Greenwood Mortgage Loan 4**

45.    It was further part of the scheme that on or about October 16, 2007, defendant FURMAN prepared and defendant FISHKIN signed an application to ING for a $1.4 million refinance loan secured by 688 Greenwood ("688 Greenwood Mortgage Loan 4") falsely representing among other things, that the purpose of the loan was to refinance the property, and omitting to disclose the existence of 688 Greenwood Mortgage Loans 1 and 2, defendants knowing these representations and omissions were false and material to ING's decision to approve the loan.

46.    It was further part of the scheme that defendant FURMAN submitted and caused to be submitted the loan application for 688 Greenwood Mortgage Loan 2 and an appraisal valuing the property at $2.15 million.

47.    It was further part of the scheme that on or about November 6, 2006, defendant FISHKIN signed and certified and defendant SHAYKIN caused to be signed and certified a HUD-1 form containing false representations, including that B of A (holder of 688 Greenwood Mortgage Loan 3) was paid approximately $1,410,181 at the closing, defendants knowing this statement was false because they disbursed all of the loan proceeds to defendant FISHKIN, and knowing that the property was then securing loans totaling at least $4.6 million.

48.    It was further part of the scheme that defendant SHAYKIN created and issued and caused to be created and issued to ING a fraudulent title insurance policy under the name

of Title Company A that intentionally omitted the existence of mortgages and liens on the property, including 688 Greenwood Mortgage Loans 1, 2, and 3, thereby falsely representing to ING that its mortgage was a valid first lien.

49.     It was further part of the scheme that on or about November 6, 2007, defendant FIELD sent an email to defendant SHAYKIN providing wiring instructions for disbursement of the proceeds from 688 Greenwood Mortgage Loan 4 to at least one of the Capital accounts.

50.     It was further part of the scheme than on or about November 7, 2007, defendants FISHKIN, FIELD, and SHAYKIN caused ING to fund 688 Greenwood Mortgage Loan 4 and defendants caused to be disbursed to at least one of the Capital accounts, and not to payoff any of the existing 688 Greenwood Mortgage Loans 1, 2, and 3.

**Distribution of Fraud Proceeds**

51.     It was further part of the scheme that defendants RENKO, FIELD, and FISHKIN provided to defendant SHAYKIN at least approximately $720,000 in fraudulently obtained loan proceeds, including at least approximately $660,000 in proceeds from 688 Greenwood Mortgage Loans 3 and 4 via checks written by FIELD to a real estate development company owned by SHAYKIN, and at least approximately $60,000 in proceeds via Absolute Title accounting transfers from the 700 Greenwood Mortgage Loan 3 transaction to balances owed on prior mortgage loan transactions closed at Absolute Title for properties owned by SHAYKIN.

17

52.     It was further part of the scheme that defendants RENKO, FIELD, FISHKIN, and SHAYKIN provided to defendant FURMAN at least approximately $240,000 in fraudulently obtained loan proceeds via an Absolute Title accounting transfer from the 700 Greenwood Mortgage Loan 3 transaction to a balance owed on a prior mortgage loan transaction closed at Absolute Title for a property owned by FURMAN.

53.     It was further part of the scheme that defendants RENKO, FIELD, and FISHKIN concealed the scheme by, for a period of time, using fraudulently obtained loan proceeds to make lulling payments on the fraudulently obtained residential mortgage loans, and other mortgage loans, held in their names, and to make interest payments due and owing on the Northshore Center Mortgage Loan.

54.     It was further part of the scheme that defendants RENKO, FIELD, and FISHKIN obtained residential loans and a construction loan described in Count Eleven below totaling at least $15,790,000 and defendants caused actual losses totaling at least $8,450,000.

55.     It was further part of the scheme that defendants RENKO, FIELD, FISHKIN, SHAYKIN, and FURMAN concealed, misrepresented, and hid, and caused to be concealed, misrepresented, and hidden, the existence and purpose of the scheme and the acts done in furtherance of the scheme.

56.     On or about May 18, 2007, at Cook County, in the Northern District of Illinois, Eastern Division, and elsewhere,

ALEXANDER FIELD,
KALLIOPE SHAYKIN, and
TATYANA FURMAN,

defendants herein, for the purpose of executing and attempting to execute the above-described scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, namely, the wire transfer of funds in the amount of approximately $1,016,506 from HFN Wholesale Lending in Petaluma, California, to the Absolute Title escrow account at The Private Bank, in Lake Forest, Illinois, which funds represented the proceeds from 700 Greenwood Mortgage Loan 2 to defendant FIELD;

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT TWO

The SPECIAL JULY 2010 GRAND JURY further charges:

1.      The allegations of paragraphs 1 through 55 of Count One of this indictment are incorporated by reference as if fully set forth herein.

2.      On or about June 18, 2007, at Cook County, in the Northern District of Illinois, Eastern Division, and elsewhere,

ALEXANDER FIELD,
KALLIOPE SHAYKIN, and
TATYANA FURMAN,

defendants herein, for the purpose of executing and attempting to execute the above-described scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, namely, the wire transfer of funds in the amount of approximately $1,513,188 from Texas Wholesale Funding in Charlotte, North Carolina, to the Absolute Title escrow account at The Private Bank, in Lake Forest, Illinois, which funds represented the proceeds from 700 Greenwood Mortgage Loan 3 to defendant FIELD;

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT THREE

The SPECIAL JULY 2010 GRAND JURY further charges:

1.     The allegations of paragraphs 1 through 55 of Count One of this indictment are incorporated by reference as if fully set forth herein.

2.     On or about July 23, 2007, at Cook County, in the Northern District of Illinois, Eastern Division, and elsewhere,

ALEXANDER FIELD,<br>
KALLIOPE SHAYKIN, and<br>
TATYANA FURMAN,

defendants herein, for the purpose of executing and attempting to execute the above-described scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, namely, the wire transfer of funds in the amount of approximately $1,360,039 from American Home Mortgage Inv. Corp. in Melville, New York, to the Absolute Title escrow account at The Private Bank, in Lake Forest, Illinois, which funds represented the proceeds from 700 Greenwood Mortgage Loan 4 to defendant FIELD;

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT FOUR

The SPECIAL JULY 2010 GRAND JURY further charges:

1.      The allegations of paragraphs 1 through 55 of Count One of this indictment are incorporated by reference as if fully set forth herein.

2.      On or about March 27, 2007, at Cook County, in the Northern District of Illinois, Eastern Division, and elsewhere,

EDWARD RENKO,
KALLIOPE SHAYKIN, and
TATYANA FURMAN,

defendants herein, for the purpose of executing and attempting to execute the above-described scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, namely, the wire transfer of funds in the amount of approximately $1,476,774 from Countrywide Home Loans in Calabasas, California, to the Absolute Title escrow account at The Private Bank, in Lake Forest, Illinois, which funds represented the proceeds from 711 Greenwood Mortgage Loan 2 to defendant RENKO;

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT FIVE

The SPECIAL JULY 2010 GRAND JURY further charges:

1.     The allegations of paragraphs 1 through 55 of Count One of this indictment are incorporated by reference as if fully set forth herein.

2.     On or about April 10, 2007, at Cook County, in the Northern District of Illinois, Eastern Division, and elsewhere,

EDWARD RENKO,
KALLIOPE SHAYKIN, and
TATYANA FURMAN,

defendants herein, for the purpose of executing and attempting to execute the above-described scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, namely, the wire transfer of funds in the amount of approximately $350,747 from National City in Cleveland, Ohio, to the Absolute Title escrow account at The Private Bank, in Lake Forest, Illinois, which funds represented the proceeds from 711 Greenwood Mortgage Loan 3 to defendant RENKO;

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT SIX

The SPECIAL JULY 2010 GRAND JURY further charges:

1.      The allegations of paragraphs 1 through 55 of Count One of this indictment are incorporated by reference as if fully set forth herein.

2.      On or about November 8, 2006, at Cook County, in the Northern District of Illinois, Eastern Division, and elsewhere,

GARY FISHKIN,
KALLIOPE SHAYKIN, and
TATYANA FURMAN,

defendants herein, for the purpose of executing and attempting to execute the above-described scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, namely, the wire transfer of funds in the amount of approximately $1,405,379 from Texas Wholesale Funding in Charlotte, North Carolina, to the Absolute Title escrow account at The Private Bank, in Lake Forest, Illinois, which funds represented the proceeds from 688 Greenwood Mortgage Loan 3 to defendant FISHKIN;

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT SEVEN

The SPECIAL JULY 2010 GRAND JURY further charges:

1.      The allegations of paragraphs 1 through 55 of Count One of this indictment are incorporated by reference as if fully set forth herein.

2.      On or about November 7, 2007, at Cook County, in the Northern District of Illinois, Eastern Division, and elsewhere,

GARY FISHKIN,
KALLIOPE SHAYKIN, and
TATYANA FURMAN,

defendants herein, for the purpose of executing and attempting to execute the above-described scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, namely, the wire transfer of funds in the amount of approximately $1,405,686 from ING in Wilmington, Delaware, to the Absolute Title escrow account at The Private Bank, in Lake Forest, Illinois, which funds represented the proceeds from 688 Greenwood Mortgage Loan 4 to defendant FISHKIN;

In violation of Title 18, United States Code, Sections 1343 and 2.

25

## **COUNT EIGHT**
**(Commercial Loan)**

The SPECIAL JULY 2010 GRAND JURY further charges:

1.      At times material to this indictment:

      a.      The allegations of paragraphs 1(a), 1(c), 1(g) through 1(j), and 3 of Count One of this indictment are incorporated by reference as if fully set forth herein; and

      b.      Defendants EDWARD RENKO and GARY FISHKIN were guarantors of the Northshore Center Loan.

2.      On or about July 27, 2007, within the Northern District of Illinois, Eastern Division, and elsewhere,

### EDWARD RENKO,

defendant herein, knowingly made a false statement for the purpose of influencing the action of FirstBank to extend the maturity date of the $26.21 million Northshore Center Loan, in that defendant RENKO executed and submitted to FirstBank a financial statement in support of his guaranty on the Loan in which defendant falsely stated that the mortgage debt secured by 711 Greenwood totaled $1.45 million, when defendant knew the mortgage debt secured by 711 Greenwood totaled at least approximately $5.8 million, which exceeded the value of the property;

In violation of Title 18, United States Code, Section 1014.

26

## COUNT NINE
### (Commercial Loan)

The SPECIAL JULY 2010 GRAND JURY further charges:

1.     The allegations of paragraph 1 of Count Eight of this indictment are incorporated by reference as if fully set forth herein.

2.     On or about August 20, 2007, within the Northern District of Illinois, Eastern Division, and elsewhere,

GARY FISHKIN,

defendant herein, knowingly made a false statement for the purpose of influencing the action of FirstBank to extend the maturity date of the $26.21 million Northshore Center Loan, in that defendant FISHKIN executed and submitted to FirstBank a financial statement in support of his guaranty on the Loan in which defendant falsely stated that his mortgage debt liabilities totaled approximately $1.635 million, when defendant knew that he owed at least an additional approximately $4.6 million in mortgage debt secured by 688 Greenwood, which exceeded the value of the property;

In violation of Title 18, United States Code, Section 1014.

## COUNT TEN
**(Commercial Loan)**

The SPECIAL JULY 2010 GRAND JURY further charges:

1.     The allegations of paragraph 1(d) of Count One and paragraph 1 of Count Eight of this indictment are incorporated by reference as if fully set forth herein.

2.     In or about August 2007, within the Northern District of Illinois, Eastern Division, and elsewhere,

### KALLIOPE SHAYKIN,

defendant herein, knowingly made a false statement for the purpose of influencing the action of FirstBank to extend the maturity date of the $26.21 million Northshore Center Loan, in that defendant KALLIOPE SHAYKIN submitted to FirstBank a letter in which defendant falsely certified that Absolute Title "established escrow account [number 53351] titled 'Residences of the Northshore' for earnest money deposits on condominium unit purchases at the 'Center of the Northshore'. To date, the total amount of deposits in the account equals to $1,140,330.00," knowing those statements to be false at the time because the described escrow account did not exist at Absolute Title;

In violation of Title 18, United States Code, Section 1014.

## COUNT ELEVEN
### (Construction Loan)

The SPECIAL JULY 2010 GRAND JURY further charges:

1.        At times material to this indictment:

        a.        The allegations of paragraphs 1(a) through 1(c), and 1(g) through 1(j) of Count One of this indictment are incorporated by reference as if fully set forth herein; and

        b.        3888 Maple LLC, located at 3100 Dundee Road, Suite 107, Northbrook, Illinois, was the borrower on a construction loan from AEB in the amount of $1.972 million secured by a mortgage on the property located at 3888 Maple Avenue, in Northbrook, Illinois (the "3888 Maple Loan").

2.        Beginning no later than on or about May 28, 2007, and continuing until at least on or about November 9, 2007, within the Northern District of Illinois, Eastern Division, and elsewhere,

EDWARD RENKO,
ALEXANDER FIELD, and
GARY FISHKIN,

defendants herein, devised, intended to devise, and participated in a scheme to defraud, and to obtain money and property owned by and under the custody and control of AEB, an FDIC-insured financial institution, by means of material false and fraudulent pretenses, representations, and promises, and by material omissions.

3.        It was part of the scheme that defendants RENKO, FIELD, and FISHKIN each guaranteed the 3888 Maple Loan and in support submitted and caused to be submitted to

29

AEB a personal financial statement containing false representations and material omissions that understated the amount of mortgage debt secured by 711 Greenwood, 700 Greenwood, and 688 Greenwood, respectively, in order to obtain funding of the 3888 Maple Loan.

4.     It was further part of the scheme that defendant RENKO submitted and caused to be submitted to AEB a personal financial statement dated July 27, 2007, falsely stating that the mortgage debt secured by 711 Greenwood totaled $1.45 million, when defendant RENKO knew the mortgage debt secured by 711 Greenwood at the time totaled at least approximately $5.8 million.

5.     It was further part of the scheme that defendant FIELD submitted and caused to be submitted to AEB a personal financial statement dated November 7, 2007, falsely stating that there was no mortgage debt secured by 700 Greenwood, when defendant FIELD knew the mortgage debt secured by 700 Greenwood at the time totaled at least approximately $7.85 million.

6.     It was further part of the scheme that defendant FISHKIN submitted and caused to be submitted to AEB a personal financial statement dated November 7, 2007, falsely stating that there was no mortgage debt secured by 688 Greenwood, when defendant FISHKIN knew the mortgage debt secured by 688 Greenwood at the time totaled at least approximately $4.6 million.

7.      On or about November 9, 2007, in the Northern District of Illinois, Eastern Division, and elsewhere,

EDWARD RENKO,
ALEXANDER FIELD, and
GARY FISHKIN,

defendants herein, knowingly executed and attempted to execute the above-described scheme to defraud AEB, and to obtain money and property owned by and under the custody and control of AEB, by means of false pretenses, representations, and promises, and material omissions, by closing on the 3888 Maple Loan in the amount of approximately $1,970,000 and causing AEB to disburse loan proceeds;

In violation of Title 18, United States Code, Sections 1344 and 2.

31

## FORFEITURE ALLEGATION ONE

The SPECIAL JULY 2010 GRAND JURY further charges:

1.      The allegations in Counts One, Three, and Four of this indictment are hereby realleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2.      As a result of their violations of Title 18, United States Code, Section 1343, as alleged in Counts One, Three, Four, and Six of this indictment,

EDWARD RENKO,
GARY FISHKIN,
ALEXANDER FIELD,
KALLIOPE SHAYKIN, and
TATYANA FURMAN,

defendants herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all right, title, and interest they may have in any property constituting, and derived from, proceeds they obtained directly and indirectly as the result of such violations.

3.      The interests of the defendants subject to forfeiture pursuant to Title 18, United States Code, Section Section 981(a)(1)(C), as incorporated by Title 28, United States Code, Section 2461(c), include funds in the amount of at least $3,853,319.

4.      If any of the forfeitable property described above, as a result of any act or omission by the defendants:

32

(a)    cannot be located upon the exercise of due diligence;

(b)    has been transferred or sold to, or deposited with, a third party;

(c)    has been placed beyond the jurisdiction of the court;

(d)    has been substantially diminished in value; or

(e)    has been commingled with other property which cannot be divided

without difficulty,

the United States of America shall be entitled to forfeiture of substitute property under the

provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 28,

United States Code, Section 2461(c).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28,

United States Code, Section 2461(c).

## FORFEITURE ALLEGATION TWO

The SPECIAL JULY 2010 GRAND JURY further charges:

1.      The allegations in Counts Two, Five, Six, Seven, and Eleven of this indictment are hereby realleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 982(a)(2).

2.      As a result of their violations of Title 18, United States Code, Section 1343 and 1344, as alleged in Counts Two, Five, Seven, Eight, and Twelve of this indictment,

EDWARD RENKO,
GARY FISHKIN,
ALEXANDER FIELD,
KALLIOPE SHAYKIN, and
TATYANA FURMAN,

defendants herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2), any and all right, title, and interest they may have in any property constituting, and derived from, proceeds they obtained directly and indirectly as the result of such violations.

3.      The interests of the defendants subject to forfeiture pursuant to Title 18, United States Code, Section 982(a)(2), include funds in the amount of at least $6,645,000.

4.      If any of the forfeitable property described above, as a result of any act or omission by the defendants:

(a)      cannot be located upon the exercise of due diligence;

(b)      has been transferred or sold to, or deposited with, a third party;

34

(c)     has been placed beyond the jurisdiction of the court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be divided

without difficulty,

the United States of America shall be entitled to forfeiture of substitute property under the

provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 18,

United States Code, Section 982(b)(1);

All pursuant to Title 18, United States Code, Section 982(a)(2).


A TRUE BILL:


_____

FOREPERSON


_____

UNITED STATES ATTORNEY


35